## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Lee A. Turner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 16-CV-00667-MN |
| v. | ) | |
| | ) | TRIAL BY JURY OF TWELVE |
| CONNECTIONS COMMUNITY SUPPORT | ) | DEMANDED |
| PROGRAMS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### NOTICE OF SERVICE

I, Nicholas R. Wynn, Esquire, hereby certify that on this 24ᵗʰ day of May, 2019, a copy of

***DEFENDANT, CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.'S OBJECTIONS AND REPONSES TO PLAINTIFF'S SECOND INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS*** were served under seal via CM/ECF and upon Plaintiff via U.S. Mail to:

Lee Turner
SBI #00398441
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE 19977

### WHITE AND WILLIAMS LLP

/s/ Nicholas R. Wynn
**NICHOLAS R. WYNN (#5670)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE   19801-3722
(302) 467-4527
*Counsel for Defendant Connections Community
Support Programs, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Lee A. Turner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 16-CV-00667-MN |
| v. | ) | |
| | ) | TRIAL BY JURY OF TWELVE |
| CONNECTIONS COMMUNITY SUPPORT | ) | DEMANDED |
| PROGRAMS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.'S RESPONSES TO PLAINTIFF'S SECOND INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

**<u>REDACTED IN ITS ENTIRETY</u>**

**WHITE AND WILLIAMS LLP**

 /s/ Nicholas R. Wynn
**DANA SPRING MONZO (#4605)**
**NICHOLAS R. WYNN (#5670)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE   19801-3722
(302) 467-4527
*Counsel for Defendant Connections Community*
*Support Programs, Inc.*

Dated:  May 24, 2019

42

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| Lee A. Turner, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 16-CV-00667-MN |
| v. | ) | |
| | ) | TRIAL BY JURY OF TWELVE |
| CONNECTIONS COMMUNITY SUPPORT | ) | DEMANDED |
| PROGRAMS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Nicholas R. Wynn, Esquire, hereby certify that on this 24th day of May, 2019, a copy of *DEFENDANT CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.'S RESPONSES TO PLAINTIFF'S SECOND INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS – REDACTED IN ITS ENTIRETY* were filed via CM/ECF and sent via U.S. Mail to:

> Lee Turner
> SBI #00398441
> James T. Vaughn Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

### WHITE AND WILLIAMS LLP

 /s/ Nicholas R. Wynn
**DANA SPRING MONZO (#4605)**
**NICHOLAS R. WYNN (#5670)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE   19801-3722
(302) 467-4527
*Counsel for Defendant Connections Community Support Programs, Inc.*

22875223v.1

43

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LEE A. TURNER,                          )
                                        )
                    Plaintiff,          )
                                        )   C.A. No. 16-CV-00667-MN
          v.                            )
                                        )   TRIAL BY JURY OF
                                        )   TWELVE DEMANDED
CONNECTIONS COMMUNITY                   )
SUPPORT PROGRAMS, INC., et al.          )
                                        )
                    Defendants.         )
                                        )
                                        )

**DEFENDANT, CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.'S, OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant Connections Community Support Programs, Inc., (hereinafter "Responding Defendant"), by and through its attorneys, White and Williams LLP, hereby responds and objects to Plaintiffs' Interrogatories and Request for Production of Documents 2nd as follows:

### GENERAL OBJECTIONS

Responding Defendant incorporates the following general objections into its objections to each of Plaintiff's individual discovery requests. The omission of any general objection in a specific objection to an individual request does not waive that general objection to that individual request.

     1.   <u>Privilege</u>. Responding Defendant objects to the interrogatories and requests for production to the extent that they call for disclosure of proprietary information or information protected by the attorney-client privilege, the attorney

work product doctrine, the Health Insurance Portability and Accountability Act ("HIPAA"), the Delaware Medical Practice Act or other applicable privileges. Specifically as to discovery requests regarding physician credentialing, objection is made to inquiries into any privileged aspect of the process or portion of credentialing file, pursuant to the Delaware Medical Practice Act, 24 Del. C. § 1768, *et. seq.*

      2.    <u>Beyond the Scope of Rules Governing Discovery</u>.  Responding Defendant objects to the following interrogatories and requests for production to the extent that they:  (a) seek information not in Defendant's (s') possession, custody or control; (b) seek discovery that is unreasonably cumulative or duplicative; (c) seek information that is publicly-available or otherwise obtainable from some other source that is more convenient, less burdensome or less expensive; and (d) may otherwise be construed to require responses beyond those required by the Delaware District Court Rules of Civil Procedure.

      3.    <u>Relevance</u>. Responding Defendant objects to the interrogatories and requests for production to the extent that they seek information or documentation not relevant to the claims or defenses in this matter, and not reasonably calculated to lead to the discovery of admissible evidence.

      4.    <u>Vague, Ambiguous, Overly Broad, Unduly Burdensome, Incomprehensible, Oppressive, and/or Hypothetical</u>.  Responding Defendant objects to the interrogatories and requests for production to the extent they are vague, ambiguous, overly broad, unduly burdensome, oppressive, incomprehensible, hypothetical in nature, and/or do not permit a reasonable response.

      5.    <u>Information Equally Accessible by Both Parties</u>.  Responding Defendant objects to the interrogatories and requests for production to the extent they seek information already in Plaintiffs' possession, custody, or control.

      6.    <u>Time Period</u>. Responding Defendant object to the interrogatories and requests for production to the extent that they do not set a reasonable time period for the discovery of information.

      7.    <u>Proprietary Information/Trade Secrets</u>.  Responding Defendant objects to the interrogatories and requests for production to the extent they seek proprietary information subject to trade secret laws and protection.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LEE A. TURNER,                     )
                                   )
                    Plaintiff,     )    C.A. No. 16-CV-00667-MN
                                   )
        v.                         )    TRIAL BY JURY OF
                                   )    TWELVE DEMANDED
CONNECTION COMMUNITY               )
SERVICE PROGRAM, INC., et al.      )
                                   )
                    Defendants.

## VERIFICATION OF OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND INTERROGATORIES AND REQUEST FOR PRODUCTION OF <u>DOCUMENTS</u>

The undersigned does hereby verify that I have read the foregoing answers to interrogatories and know the contents thereof, and the same are true to my knowledge, information, and belief.   I declare under the penalty of perjury under the laws of Delaware that the foregoing is true and correct.

Executed on this ⎣⎦ day of May , 2019.

_____
Christopher Moen, M.D.

46

8.     Responding Defendant objects to the preliminary instructions contained in Plaintiff's Discovery Interrogatories to the extent that they are irrelevant to the instant case and/or attempt to modify or require answers beyond those required by the Delaware District Court Rules of Civil Procedure.

Further, as an investigation of this matter is ongoing, Responding Defendant specifically reserves the right to supplement the responses below should further discoverable information be learned or discovered during the ongoing investigation.

Additionally, Responding Defendant's policies and procedures and other like documents are confidential proprietary business documents. As such, Responding Defendant will only provide copies of any such documents, including any identified herein as exhibits, subject to either a confidentiality agreement among the parties or an order of court providing for confidentiality of the documents with no re-disclosure to any third party except Plaintiffs' expert(s) solely for the purposes of litigation and return/destruction of all copies of the documents at the conclusion of this litigation.

**1. RESPONSE: See Health Care Services Contract previously produced and bates stamped as 000422-000439, DOC Request for Proposals Contract No. DOC1426-HEALTH previously produced and bates stamped as 000840-000916, CCSP's Letter of October 15, 2015 previously produced and bates stamped as 00606, as well as CCSP Proposal in Response dated October 18, 2013, previously produced and bates stamped as 00607-00749.**

**2. RESPONSE: Objection; overly broad and unduly burdensome and harassing; seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiver of these objections, Answering Defendant has no "quality assurance audits" which refer specifically to physical therapy services.**

3.  RESPONSE: Objection; overly broad and unduly burdensome and harassing; seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Without waiver of these objections, Plaintiff is apparently referencing the Continuous Quality Improvement process and these meetings and discussions are protected by peer review and are protected from disclosure pursuant to 24 *Del. C.* § 1739 and § 1768.  By way of further response these plans and reports are the property of the Delaware Department of Corrections.

4.  RESPONSE: Objection; overly broad, unduly burdensome and harassing; seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and somewhat incomprehensible.  Without waiver of these objections, Responding Defendant is willing to provide further information if it exists once the request is more clearly phrased by Plaintiff.

5.  RESPONSE: Objection; overly broad, unduly burdensome and harassing; seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiver of these objections, see the redacted monthly staffing reports in the possession of Responding Defendant bates stamped 2014PCD00001-00014, 2015PCD00015-00024, 2016PCD00025-00069, 2017PCD00070-00235, 2018PCD00236-00500,

2019PCD00501-00595, 2014PCC00596 and produced contemporaneously herewith.

6. RESPONSE:  Objection; overly broad, unduly burdensome and harassing. Without waiving these objections, see previously produced documents bates stamped 000440-000443.

7. RESPONSE:  Objection; overly broad, unduly burdensome and harassing. Without waiving these objections, see previously produced documents bates stamped 000444-000446.

8. RESPONSE: Objection; overly broad, unduly burdensome and harassing, and somewhat incomprehensible.  Without waiving these objections, the Chief Physician Executive (CPE) is generally responsible for overseeing the day to day health care decisions of the facilities where Connections provides health care services.  The specific tasks handled by the CPE can vary based on staffing and operational needs, and have included, seeing patients, handling grievances, overseeing the operation of different treatment centers, and addressing concerns related to healthcare and treatment.  By way of further response, Responding Defendant does not have a written job description for the CPE in its possession.

9. RESPONSE:  Objection; overly broad, unduly burdensome and harassing, somewhat incomprehensible, and duplicative.  Further, this

22776468v.1

information was previously supplied at response 10 to Plaintiff's First Interrogatories and Request for Production of Documents.

10. RESPONSE:  Objection; overly broad, unduly burdensome and harassing.  Without waiving these objections and by way of further response when Connections did not have a physical therapist at JTVCC, inmates needing physical therapy were referred to Christiana Care Rehabilitation, the sole community provider willing to provide services to inmates.  Christiana Care Rehabilitation limited the number of inmates who could receive physical therapy at any given time resulting in a wait list.

11. RESPONSE: Objection; overly broad, unduly burdensome and harassing, not proportional to the needs of this case, not likely to lead to relevant discoverable material, and somewhat incomprehensible.  Without waiving these objections and by way of further response, Responding Defendant does not have a specific record of the number of inmates who were sent to Christiana Care Rehabilitation for Treatment nor can Responding Defendant readily ascertain this information.

12. RESPONSE: Objection; overly broad, unduly burdensome and harassing, not proportional to the needs of this case, and not likely to lead to relevant discoverable material.  By way of further response, Responding

**Defendant does not have a specific record of individual costs of each visit for physical therapy at Christiana Care Rehabilitation or the overall cost in 2016.**

WHITE AND WILLIAMS LLP

  /s/ Nicholas R. Wynn

**Dana S. Monzo (#4605)**
**Nicholas R. Wynn (#5670)**
600 North King Street, Suite 800
Wilmington, DE  19801-3722
(302) 467-4527
*Counsel for Defendant,*
*Connections Community Support*
*Programs, Inc.*

Dated: May 24, 2019

## HEALTH CARE SERVICES CONTRACT

This Contract, a professional services Contract under the law of the State of Delaware, is made this 6ᵀᴴ day of MARCH, 2014, by and between Connections Community Support Programs, Inc. ("CCSP") and the State of Delaware Department of Correction ("DOC")(collectively referred to as the "Parties").

## RECITALS

**WHEREAS,** DOC desires to procure professional healthcare services to serve the needs of the State of Delaware and its incarcerated offender population; and

**WHEREAS,** DOC has asked prospective vendors to submit proposals in relation to Contract No. DOC1426-Health; and

**WHEREAS,** CCSP submitted a proposal to provide certain health care services and such proposal was accepted by DOC;

**NOW, THEREFORE,** in consideration for the mutual promises contained herein, the Parties enter into this Contract and each of the documents that comprise this Contract as specifically incorporated by reference herein and revoke any previous Contracts between the Parties regarding health care services, with the exception of Contract No. DOC1202-Mental Health. All references to the "State," "Delaware," "DDOC," the "Department of Correction," or the "Department" shall be deemed as references to DOC. All references to "Vendor," "CCSP," "Connections CSP," or "Connections Community Support Programs, Inc." shall be deemed as a reference to CCSP. The terms and conditions of this Contract are contained within this DOC/CCSP professional healthcare services Contract which shall include by reference the following documents:

- This Contract and its Exhibits;

1

000422

52

- The DOC Request for Proposals for Contract No. DOC1426-Health and any amendments thereto (Exhibit A);

- CCSP's Letter of October 15, 2013 (Exhibit B);

- CCSP's Proposal in Response to the above Exhibit A (Exhibit C).

**NOW THEREFORE**, DOC and CCSP mutually agree as follows:

1. ***Contract Term.*** Subject to the other terms and provisions hereof, the initial term of this Contract will be for four (4) years commencing on June 1, 2014 (the "commencement date") and shall terminate, unless renewed, on June 30, 2018 (the "natural termination date"). The Contract may be renewed by DOC for two (2) additional two (2) year renewal periods.

2. ***Contract Price.*** DOC and CCSP agree on an annual base price of $40,602,500 for the first 13 months ("year one") of this Contract and $41,414,550 for the next 12 months ("year two") of this Contract. The annual base price for the last 24 months ("years three and four") of the initial term of this Contract may be increased by a percentage consistent with the U.S. Department of Labor's "All Items Consumer Price Index for All Urban Consumers" (CPI-U); provided, however, that any such percentage increase in years three or four shall not exceed 2.5% of the annual base price then in effect. The Parties further agree the CCSP shall submit to DOC an invoice on or about the last day of each month commencing on June 30, 2014. CCSP may invoice DOC every fourteen days, beginning with July 15, 2014 and continuing through January 15, 2015, at its discretion. For year one, the total invoices for each month shall not exceed one thirteenth (1/13) of the annual base price for the first year of this Contract. After year one, each invoice shall be for one-twelfth (1/12) of the annual base price due hereunder for each year of this

2

000423

53

Contract. For year one, the monthly invoiced amount shall be no greater than $3,123,269.23. For year two, the monthly invoiced amount shall be no greater than $3,451,212.50. DOC shall pay the undisputed portion of each invoice within 30 days of receipt. The amount of said monthly payment shall be subject to modification only as set forth in this Contract or as mutually agreed upon by the Parties pursuant to a subsequent mutually-signed writing. Adjustments to compensation may be made to account for Medicaid reimbursements or the results of quality assurance reviews audits or other processes or events giving rise to additions or deductions as set forth in this Contract, its exhibits, or attachments. Invoices shall be submitted in electronic format to:

John Oldigs
Senior Fiscal Administrative Officer
245 McKee Rd.
Dover, DE 19904
john.oldigs@state.de.us

3.   ***Superseding Modifications to Contract Documents.***   The following terms and conditions shall, in addition to the other paragraphs of this Contract, supersede any language in the Exhibits to this Contract:

A.     The contract price as outlined in Paragraph 2 of this Contract shall be subject to the adjustments to compensation set forth in Exhibit B.  Adjustments to compensation shall be either withheld or added to the monthly invoiced amount on a monthly, quarterly or annual basis.

B.     CCSP shall have a grace period to bring its staffing levels into compliance with the Contract.  Any and all adjustments to compensation related to staffing requirements shall be tolled until January 31, 2015; any act, omission, event, metric, or

3

000424

54

performance measure which might give rise to a staffing-related adjustment to compensation must occur on or after January 1, 2015.

C.    Should DOC exercise any option to renew this agreement as set forth in Paragraph 1, the Parties agree that the annual base price for any two-year renewal period exercised under this Contract may be increased by a percentage consistent with the CPI-U; provided, however, that any such percentage increase shall not exceed 2.5% of the annual base price then in effect.

D.    The Parties agree that DOC will conduct quality assurance audits as detailed in Appendix I to the Request for Proposal for Contract No. DOC1426-Health. Under no circumstances shall DOC utilize data or information for audit purposes which may be generated by CCSP in relation to any of its internal peer review functions. In the event that CCSP fails to achieve a compliance goal, CCSP shall submit a corrective action plan to DOC for its approval.

E.    CCSP agrees that it shall be responsible for any and all charges related to telephone and data transmission lines set aside specifically for the use of CCSP. DOC agrees to timely provide CCSP with the invoices it receives for such services in order to facilitate prompt payment.

F.    Mandatory Staffing Level Enforcement. The positions and hours to be provided as part of the Contract between the DOC and CCSP are set forth in Appendix H to the Request for Proposal for Contract No. DOC1426-Health (Vendor Staffing Requirements), attached hereto, and Table No. 7 (Position by Credentials, Shift, Location and Contract Title) of CCSP's Proposal (pages 84-91) as amended during contract negotiations and attached as Exhibit 1 to this Contract. These are mandatory minimum



4

staffing levels and compliance with the staffing levels is a material term of this Contract. CCSP shall make diligent, good faith efforts to fill all positions contemplated in the Contract. The following subparagraphs govern mandatory staffing levels under this Contract. Nothing herein shall be considered an election of remedies nor shall it inhibit any other statutory or common law action or remedy available to the Parties which might arise out of the operation of this Contract.

1. Credit for Non-Compliance. The DOC and CCSP agree that monetary credits as defined and quantified herein may be imposed by the DOC for net unfilled/uncovered hours. Adjustments to compensation for non-compliance with the requirements of Section II.B.4.a.vii of the Request for Proposal for Contract No. DOC1426-Health are set forth in the aforementioned Request for Proposal.

2. Definitions.

2.1 "Unfilled/uncovered hours" shall be defined as those hours which CCSP failed to cover with an appropriately licensed and credentialed employee or contractor due to voluntary or involuntary termination or any other reason or incident resulting in the position being unfilled and not covered. The term "unfilled/uncovered hours" does not include those hours not covered due to training, orientation and paid time off (PTO), such as for illness, annual or personal leave or any other paid leave provided pursuant to the approved employment policies of CCSP. Notwithstanding the language of this paragraph, a position shall be deemed uncovered if a permanent employee of CCSP fails to cover the position for a period of greater than 90 consecutive days.

5

000426

2.2 A full time equivalent (FTE) will be defined as 2,080 hours annually, inclusive of PTO.

2.3   For purposes of calculating monthly contractual hours required, the calculation will utilize eight hours per work day, multiplied by the number of business days in the month, inclusive of holidays, so that the combination of any calendar year will reflect 2,080 hours (except for leap years which will calculate as 2,088 hours).

3. Written Report Required.   CCSP will provide a certified monthly written report of the work hours paid each month indexed by amount of hourly rate, position, and facility.   The report required herein will compare the work hours paid each month to the requirements of pages 124-132 of CCSP's Proposal. The average hourly rate for any uncovered/unfilled hours in excess of the requirements of pages 124-132 of CCSP's Proposal will be specified in each report required herein.   The monthly calculation will be completed for the previous service month and aggregated for the entire contract year. These figures shall be reported in each report as the "cumulative monthly staffing level credit" and the "cumulative yearly staffing level credit." CCSP will credit the DOC on a monthly basis for the amount of each cumulative monthly staffing level credit, net of previous credits and billings issued. At no time will the DOC be charged with a total net overage for hours provided – any cumulative staff hours provided beyond the staffing levels required by this Contract will be at the expense of the Contractor. Overages in any given month may not be combined or calculated in a manner which offsets uncovered/unfilled hours.  If, however, the DOC requests

6

000427

additional staff, the DOC agrees to negotiate an amendment to the contract to account for the expansion of any newly demanded positions.

    4.    Time Considerations.  CCSP will submit the report required by subparagraph 3 above no later than thirty (30) days after the month of service in a manner which shall permit the DOC to deduct any potential credit from the next required payment. Reports may be submitted electronically. In the event that an amount is owed to CCSP based upon previous assessed credits, the DOC will remit such additional funds at the time of the next required payment. Because of the potential for corrections to timesheets, as well as the possibility of invoices received later than 30 days past the month of service, agreed upon adjustments to the prior month of hours paid may be processed for the next two monthly reports following the notice of any need for such adjustments. For example, services provided in July will be reported by the end of August. Corrections to the July hours paid will be allowed at the end of September and the end of October, to reflect the true total of hours paid by position.

4. *Major Equipment Purchases.* The Parties acknowledge that DOC shall pay for any equipment, supplies, and fixtures which may be necessary, required and requested by CCSP under the operation of this Contract which individually exceeds $500.00 per individual item. All DOC-owned equipment, supplies, and fixtures currently in place at or located within the facilities at which services shall be provided shall be made available to CCSP at no cost to or credit against CCSP in connection with the performance of its services hereunder. In addition, DOC shall provide at its cost and expense all reasonable

7

000428

maintenance services required and requested by CCSP in connection with any DOC-owned equipment, supplies, and fixtures or any part of the DOC's facilities.

5. **Adequate Performance Defined.** The Parties acknowledge and agree that minimally adequate performance under this Contract requires both a minimum level of staffing and the adequate provision of healthcare services. The adequacy of healthcare services and overall Contract performance shall be measured not only by the level of staffing but also by CCSP's performance in relation to the audits set forth herein at Appendix I of the Request for Proposal for Contract No. DOC1426-Health and adherence to the National Commission on Correctional Health Care ("NCCHC") standards, American Correctional Association ("ACA") health care standards (where applicable) and the policies of the DOC's Bureau of Correctional Healthcare Services. The Parties agree that staffing levels (as set forth in the Mandatory Staffing Level Enforcement metrics as set forth in Table 7 of CCSP's Response to Request for Proposal for Contract No. DOC1426-Health (pages 84-91), audit performance, the maintenance of NCCHC accreditation, the maintenance of ACA health care accreditation and standards (where applicable), and adherence to the policies of the DOC's Bureau of Correctional Healthcare Services are each material terms of this Contract.

6. **Legal Requirements.** CCSP shall maintain all legally required licenses, certifications, insurance coverages, as well as the performance bond required herein, as not otherwise stated by this Contract, during the entire term of this Contract.

7. **Expense of Performance.** Unless provided otherwise in this Contract, all expenses incurred in the performance of the services are to be paid by CCSP. If this Contract

000429

specifically provides for expense reimbursement, CCSP shall be reimbursed only for reasonable expenses incurred by CCSP in the performance of the services.

8. *State Sovereignty.* Delaware is a sovereign entity, and shall not be liable for the payment of federal, state and local sales, use and excise taxes, including any interest and penalties from any related deficiency, which may become due and payable as a consequence of this Contract.

9. *Acceptance; Non-Waiver.* Permitted or required approval by Delaware of any services furnished by CCSP shall not in any way relieve CCSP of responsibility for the professional and technical accuracy and adequacy of its work. DOC's review, approval, acceptance, or payment for any of CCSP' services herein shall not be construed to operate as a waiver of any rights under this Contract or of any cause of action arising out of the performance of this Contract, and CCSP shall be and remain liable in accordance with the terms of this Contract and applicable law for all damages to Delaware caused by CCSP's performance or failure to perform under this Contract.

10. *Reservation of Rights.* The rights and remedies of Delaware provided for in this Contract are in addition to any other rights and remedies provided by law.

11. *Confidentiality.* To the extent permissible under federal law and 29 *Del. C.* § 10001, *et seq.*, the Parties to this Contract shall preserve in strict confidence any information, reports or documents obtained, assembled or prepared in connection with the performance of this Contract.

12. *Independent Contractor; Employment Decisions.* Subject to DOC's absolute right to manage the operations of its facilities, CCSP has and shall retain the right to exercise full control over the employment, direction, compensation and discharge of all persons

9

000430

employed by CCSP in the performance of the services hereunder; provided, however, that it will, subject to scheduling and staffing considerations, attempt to honor DOC's request relating to specific individuals.

13. *Independent Contractor; Generally.* It is understood that in the performance of the services herein provided for, CCSP shall be, and is, an independent Contractor, and is not an agent or employee of Delaware and shall furnish such services in its own manner and method except as required by this Contract. In addition to its responsibilities under as set forth in Section VI.J.5.g the Request for Proposal to Contract No. DOC1426-Health, CCSP shall be solely responsible for, and shall indemnify, defend and save Delaware harmless from all matters relating to the payment of its employees, including compliance with social security, withholding and all other wages, salaries, benefits, taxes, exactions, and regulations of any nature whatsoever. CCSP acknowledges that CCSP and any subcontractors, agents or employees employed by CCSP shall not, under any circumstances, be considered employees of Delaware, and that they shall not be entitled to any of the benefits or rights afforded employees of Delaware, including, but not limited to, sick leave, vacation leave, holiday pay, Public Employees Retirement System benefits, or health, life, dental, long-term disability or workers' compensation insurance benefits. Delaware will not provide or pay for any liability or medical insurance, retirement contributions or any other benefits for or on behalf of Delaware or any of its officers, employees or other agents. CCSP shall be responsible for providing necessary liability insurance for itself and its personnel. As an independent Contractor, CCSP has no authority to bind or commit Delaware. Nothing herein shall be deemed or construed

10

000431

to create a joint venture, partnership, fiduciary or agency relationship between the Parties for any purpose.

14. ***Multi-Source Vendor Cooperation Essential.*** The State of Delaware has chosen to employ a multi-source solution to the provision of offender healthcare services. CCSP has been selected to provide a vital, critical, and essential portion of the total healthcare services to be provided to the State of Delaware's incarcerated population. In addition to CCSP, other vendors have been selected to provide other critical healthcare functions. Communication and cooperation between such vendors, including CCSP, is absolutely essential and of the highest order of materiality. CCSP agrees and warrants that it shall provide absolute cooperation with any other healthcare services vendor providing services to DOC and the State of Delaware offender population.

15. ***Severability.*** If any term or provision of this Contract is found by a court of competent jurisdiction to be invalid, illegal or otherwise unenforceable, the same shall not affect the other terms or provisions hereof or the whole of this Contract, but such term or provision shall be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable, and the rights and obligations of the Parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent and Contracts of the Parties herein set forth. The failure to provide reasonable and appropriate cooperation as indicated herein shall be considered a material breach of this Contract.

16. ***State Appropriations Mandatory Condition of State Performance.*** Validity and enforcement of this Contract is subject to appropriations by the General Assembly of the State of Delaware of the specific funds necessary for Contract performance. Should such

11

000432

funds not be so appropriated Delaware may immediately terminate this Contract, and absent such action this Contract shall be terminated as to any obligation of the State requiring the expenditure of money for which no specific appropriation is available, at the end of the last fiscal year for which no appropriation is available or upon the exhaustion of funds. Notwithstanding any other provisions of this Contract, this Contract shall terminate and Delaware's obligations under it shall be extinguished at the end of the fiscal year in which Delaware fails to appropriate monies for the ensuing fiscal year sufficient for the payment of all amounts which will then become due.

17. **_Termination for Cause._** If for any reason, or through any cause, the Vendor fails to fulfil in timely and proper manner its obligations under the Contract, or if the Vendor violates any of the covenants, Contract or stipulations of the Contract, the DOC shall thereupon have the right to terminate the Contract by giving written notice to the Vendor of such failure and demand that such failure be cured within 30 days. If such obligations, covenants, Contracts or stipulations are not cured to the satisfaction of DOC within 30 days from the date of the notice, DOC may terminate the Contract with the Vendor by providing a termination date no shorter than 90 days from the date the Vendor's attempts at a cure have failed. In that event, all finished or unfinished documents, charts, data, studies, surveys, drawings, maps, models, photographs and reports or other material prepared by the Vendor under the Contract shall, at the option of the DOC, become its property, and the Vendor shall be entitled to receive just and equitable compensation for any satisfactory work completed on such documents and other materials which is useable to the DOC. In the event of a termination for cause, CCSP agrees that it will not be

12

entitled to any compensation, whether equitable or monetary, related to any unexecuted portion of this Contract.

18. ***Termination for Convenience.*** Either party may terminate the Contract at any time by giving written notice of such termination and specifying the effective date thereof, at least one hundred and twenty (120) days before the effective date of such termination. In that event, all finished or unfinished documents, charts, data, studies, surveys, drawings, maps, models, photographs and reports or other material prepared by the Vendor under the Contract shall, at the option of the DOC, become its property, and the Vendor shall be entitled to compensation for any satisfactory work completed on such documents and other materials which is useable to the DOC.   In the event of a termination for convenience, CCSP agrees that it will not be entitled to any compensation, whether equitable or monetary, related to any unexecuted portion of this Contract.

19. ***Non-Waiver.*** The delay or failure by either party to exercise or enforce any of its rights under this Contract shall not constitute or be deemed a waiver of that party's right thereafter to enforce those rights, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.

20. ***Public Records; DOC's Right to Inspect.*** CCSP shall maintain all public records, as defined by 29 *Del. C.* § 502, relating to this Contract and its deliverables for the time and in the manner specified by the Delaware Division of Archives, pursuant to the Delaware Public Records Law, 29 *Del. C.* Ch. 5.   During the term of this Contract, authorized representatives of Delaware may inspect or audit CCSP' performance and records pertaining to this Contract at the CCSP business office during normal business hours.

13

000434

21. ***Proof of Insurance.***    Before any work is done pursuant to this Contract, the Certificate of Insurance and/or copies of the insurance policies, referencing the Contract number stated herein, shall be filed with the State. The certificate holder is as follows: John Oldigs, Department of Correction.    In no event shall the State of Delaware be named as an additional insured on any policy required under this Contract. CCSP warrants that the amounts of insurance required by this Contract will remain in full force and effect during the full term of this Contract without lapse or diminution of required coverage limitations.

22. ***Choice of Law and Venue.***  The laws of the State of Delaware shall apply, except where federal law has precedence. CCSP consents to jurisdiction and venue within the State of Delaware. CCSP must remain in good standing with the State of Delaware.

23. ***Contract Contents; Documents and Order of Authority.***  The following documents contain the essential and material terms of the Contract between DOC and CCSP:

> 1) This Contract and its Exhibits hereto;
>
> 2) The DOC Request for Proposals for Contract No. DOC1426-Health and any amendments thereto (Exhibit A);
>
> 3) CCSP's Letter of October 15, 2013 (Exhibit B);
>
> 4) CCSP's Proposal in Response to the above Exhibit A (Exhibit C).

In the event of a conflict, contradiction, vagueness and/or ambiguity with respect to or in relation to the contents of the above-listed documents, the above-listed numerical order shall dictate and control the terms of this Contract such that the authority of each successive document is controlled by the preceding document, with this Contract containing the highest level of authority.

14

000435

65

| Year 1 | 920,000 |
|--------|---------|
| Year 2 | 1,029,000 |
| Year 3 | 1,078,350 |
| Year 4 | 1,098,101 |

Based on $4/sick call
$2/Rx for non-chronic illness
$38 per Medicaid physician/NP visit (50% of detainees)
10 visits per day x 4 sites @$38
10% increase in Year 2; 5% year 3; 3% year 4
10% of all labs and other consults in year one; 15% in year 2; 20% in years 3 and 4
These are estimates. All actual receipts will be reported and credited against the DDOC invoice.

18

000439

CONTRACT EXHIBIT 1

**DOC1426-HEALTH Budget Summary based on 7,000 ppd**

| Fixed Costs | |
|---|---:|
| Mid-Level Practitioners and Above | 5,501,100.00 |
| Line Staff | 15,916,300.00 |
| Performance Bond | 600,000.00 |
| Professional Liability/Malpractice Insurance | 250,000.00 |
| Other Employment Costs (benefits, tax, workers comp) | 4,598,662.00 |
| Subtotal | 26,866,062.00 |
| Management Costs | |
| Senior Management--non-medical | 844,000.00 |
| Admin Overhead | 181,506.00 |
| Office Space | 55,000.00 |
| Indirect Costs | 1,327,804.50 |
| Subtotal | 2,408,310.50 |
| Variable Costs | |
| Outside Consults, Gross Profit, G&A, Legal Representation | 200,000.00 |
| Medical equipment, supplies, hospital use,specialty consults | 9,981,600.00 |
| Subtotal | 10,181,600.00 |
| Mark-Up | |
| Profit over Costs | 3% |
| Subtotal | 1,146,527.50 |
| Annual Base Total | 40,602,500.00 |
| Year 1 Performance Incentive Potential | 0.00 |
| Potential Year 1 Not to Exceed | 40,602,500.00 |

| Cost Price Inflation Not to Exceed Total | |
|---|---|
| Year 2 | 41,414,550 |
| Year 3 | 42,242,841 |
| Year 4 | 43,087,698 |

Cost per Offender/day $ 15.90

Based on 7,000 PPD

Medicaid and Co-Pay Revenue

17

000438

67

24. ***Entire Agreement; Interpretation; Modification.***  This Contract, its Exhibits and Appendices shall constitute the entire Contract between DOC and CCSP with respect to the subject matter of this Contract and shall not be modified or changed without the express written consent of the Parties.  The provisions of this Contract supersede all prior oral and written quotations, communications, Contracts and understandings of the Parties with respect to the subject matter of this Contract.  If the scope of any provision of this Contract is too broad in any respect whatsoever to permit enforcement to its full extent, then such provision shall be enforced to the maximum extent permitted by law, and the Parties hereto consent and agree that such scope may be judicially modified accordingly and that the whole of such provisions of the Contract shall not thereby fail, but the scope of such provision shall be curtailed only to the extent necessary to conform to the law. No waiver of any provision of this Contract shall be effective unless it is in writing and signed by the party against which it is sought to be enforced.

25. ***Joint Drafters.***  This Contract was drafted with the joint participation of both Parties and shall be construed neither against nor in favor of either, but rather in accordance with the plain and fair meaning thereof.

15

000436

**IN WITNESS WHEREOF,** the Parties have set their hands and seals hereto as of the day and year first above written.

**STATE OF DELAWARE,**
**DEPARTMENT OF CORRECTION**

By: _____

Print Name: ROBERT M. COUPE

Title: COMMISSIONER

Date: 03 / 06 / 2014

**CONNECTIONS   COMMUNITY   SUPPORT**
**PROGRAMS, INC.**

By: _____

Print Name: Catherine D. McKay

Title: President CEO

Date: 03/07/2014

16

000437

Exhibit 3

To: Counsel for Defendant, Connections)   Civil No. 16-667-MN

From: Lee Turner, Plaintiff

RE: Discovery Dispute

Date: March 13, 2019


I have recieved your responses to my interrogatories and request for production of Documents. You have objected to all of my interrogatories and request for production of Documents for multiple reasons. I will attempt thru this correspondense to clarify what I'm asking for and why my request are relevent to this legal matter.

In relation to the following responses:

Please Note: I agree/will agree to a confidentiality agreement in order to view Defendant's policies, procedures and other like documents that are confidential business documents. These documents will solely be used for the purposes of litigation, and won't be disclosed to any third parties, and will be returned/destroyed at the conclusion of this litigation.

Response (3): Names and length of tenures were provided, please provide any policy, direction or other documents as to the duties of the Health Services Administrator at JTVCC from January 1, 2014 to January 1, 2017.

1

71

Response (4): You provided Dr. Ellis name and title (Chief Physician Executive) and time frame February 2016 - July 2016 in which he held that position. But you didn't provide the duties of that position. And furthermore you stated in response (7) Dr. Ellis held two more positions Site Medical Director 2/2016 - 7/2016 and Chief Medical Officer 2/2016 - 6/2016. Please state the duties of all three of the positions and produce any policy, directive or other documents related to such positions. And to simplify and clarify my request/question I want to know every position Dr. Ellis held with Connections Csp. period. Any of these positions he held could give insight on his reasoning as to why he denied me healthcare, and his insight to Connections operational procedures.

Response (5) Any grievances or complaints against Dr. Ellis, Connections and copies of. HIPAA protects the identity of those inmates who filed hese grievances, redact their names and Id numbers. And revealing that Dr. Ellis has been the Defendant in previous lawsuits by inmates is not protected by attorney/client privilege. Please produce documents and civil action name and numbers of previous litigation against Dr. Ellis.

Response (6) This request is not overly broad, unduly burdensome and harassing. Connections Csp has a history of refusing, delaying or under-treating people who need physical therapy. This is relevant to

2          72

my claim of indifference by Connections Lsp. Produce all medical grievances pertaining specifically to physical therapy at all Delaware prisons Connections serve from January 1, 2012 to January 1, 2018 as requested. Also as requested produce any memoranda, investigative files, or other documents created in response to such complaints. As regards to HIPPA redact all names and Id numbers from documents to protect rights of clients/inmates.

Response (7) You provided the names and titles of Connections staff who were responsible for surgical approvals but didn't provide the duties of the Site Medical Director or the Chief Medical Officer as requested. Please provide any policies, directives or other documents that are set forth relating to these positions. Also the surgical approval process is important/relevant because the persons directly involved in my claim are involved in this process and were indifferent to it's seriousness. Please provide approval process and if this is set forth in any policy, directive or other documents produce documents.

Response (8): To clarify request as requested I am asking for the policy and procedure as to when a inmate returns from offsite specialty care with offsite physicians recommendations/orders. For instance it appears from document forwarded to me as to date, that an inmate returns from an offsite medical visit with an "Offsite Return (Progress Note)" form, one side is for offsite physician to fill the other is for Connection staff to fill out.

The information is placed in the computer and inmate is scheduled for a follow-up with an Connections physician to discuss offsite visit with inmate. If any physician orders/reccomendations are on the "Offsite Return Progress Note" form it is entered in the computer for further approval. This is the process I'm refering to, what is the protocal? if these policies or procedures are set forth in any policy, directive or other document, produce documents.

Response (10): You provided the names of the physical therapist but failed to provide clear timelines of their tenures. Sarah Clark you say worked 10/15/2015 - 3/10/2017, but it's been already established thru records no physical therapist working at the time of my surgery 4/18/2016, so is this date wrong or was it a break in her employment? Mary Doyle 12/5/2016 -?, Allan Marfil 12/19/2016 -?, and Francesca Fell 5/01/2017 -?; You stated their start dates but not their endings or presently work status. And lastly Mary Harbeson July 2014- January; you didn't complete her finish dates, January what? what year did she stop working?

Response (11): You were basically asked how many hours Connections physical therapist averaged a week at STVCC. You claim there is no report or records in responding Defendant's care or control, that is incorrect. Number (3) on (pg 6) of Connections contract title Written Report Required

4            74

states; CLSP will provide a certified monthly written report of the work hours paid each month indexed by amount of hourly rates, position and facility." This document will show how many physica therapist worked, what facilities and how many hours they worked. Produce certified monthly written reports mentioned from start of contract to date of response.

Response (12): To clarify my request, I was sent to Christiana Care Rehabilitation Center at 124 Sleepy Hollow Drive, Middletown, DE for physical therapy in 6/2016; I asking how long has Connections been utilizing the before mentioned center for inmates needing physical therapy, before and after my treatment. January 2014 - date of response. And has Connections used any other outside provider for physical therapy aswell; name them and their length/time frame of usage.

Response (14): The National Commission on Correctional Health Care ("NCCHC") is one of the organazations Connections Csp agreed to hold their medical health care standards up to in their contract with DDC. A report was done by NCCHC called 'Independent Review By National Conference on Correctional Health Care Resources, INC; on Connection deficiencies in medical care and under staffing. This is directly related to my claims against Connections. Produce all reports

about Connections medical care quality by the NCCHC and any other 3rd party agencies not limited but including American Correctional Association ("ACA") and DOC's Bureau of Correctional Healthcare Services.

I hope to resolve these issues related to my request between us, and hopefully soon we will be able to resolve this whole matter between your clients and I. I believe my request are reasonable and relevant to a speedy resolution. I appreciate your assistance and your clients cooperation.

Respectfully Submitted,
Lee Turner

1181 Paddock Rd.
Smyrna, DE 19977
March 20, 2019

76

To: Counsel for Defendant, Connections

From: Plaintiff, Lee Turner

RE: Civil No. 16-667-MN  Discover Dispute 2nd Letter

Date: April 28, 2019


This is my 2nd correspondence with you towards attempting to resolve my discovery disputes with your clients. Your clients refuse to comply fully with my discovery request either making illegitimate objections and/or half answered responses. On page 3 of provided part of LLSP contract under subtitle # 20. Public Records; DDC Right to Inspect: "LLSP shall maintain all public records, as difined by 29 Del § 502, relating to this Contract and it's deliverables for the time and in the manner specified by the Delaware Division of Archives, pursuant to the Delaware Public Records Law, 29 Del. L. Ch. 5. During the term of this Contract, authorized representatives of Delaware may inspect or audit LLSP' performance and records pertaining to this Contract at the LLSP business office during normal business office." So LLSP maintains it's own records at it's business office of their performance and records pertaining to their contract to be inspected or audited. I have brought Constitutional violations against your clients so my request that might take some time and effort should be produced.

77

I have also reached across these perceived obstacles and entered an affidavit to satisfy a confidentiality agreement with my 2nd Interrogatories and production of documents. If this pattern continues I will enter a motion to compel. What further do I have to do to satisfy an confidentiality agreement?

Response (3)  I'm not satisfied.

Response (4)  No job description for Chief Physician Executive? What does a Chief Physician Executive do? And your client still refuses to state other positions Dr. Ellis has held in company. And Chief Medical Officer 7-10 Job Responsibilities is missing. (000 446)

Response (5)  I'm not satisfied.

Response (6)  I'm not satisfied.

Response (7)  Satisfied.

Response (8)  Satisfied

Response (10)  Satisfied

Response (11)  I'm not satisfied  Defendant possesses information

Response (12)  Satisfied.

Response (14) This is not the report (5) I asked for.
I asked for any reports done on Corrections by the National
Commission on Correctional Health Care ("NCCHC) and the
American Correctional Association ("ACA").

Please advise your clients mutual cooperation is
in the best interest of all parties. I am working hard
to answer all request you have served me with. Also, my
2nd request for Interrogatories and Request for Documents
has not been answered and it has been over 30 days.

Lee A. Turner

1181 Paddock Rd.
Smyrna, DE 19977
May. 2, 2019

79

## **Certificate of Service**

I, _Lee Turner_, hereby certify that I have served a true

and correct copy(ies) of the attached: _2nd letter of Discovery Dispute_

_____ Upon the following

parties/person (s):


TO: _White and Williams LLP_      TO: _Office of the Clerk_

_600 N. King St. Suite 800_       _US District Court_

_Wilmington DE 19801_             _844 North King St. Unit 18_

_____             _Wilmington, DE 19801_

_____             _____


TO: _____         TO: _____

_____             _____

_____             _____

_____             _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the James T. Vaughn Correctional Center, Smyrna, DE 19977.

On this _2-2_ day of _May_, 20 _19_

_____

80

## **Certificate of Service**

I, _Lee Turner_, hereby certify that I have served a true

and correct copy(ies) of the attached: _Interrogatories and Request_

_for Production of Documents_ Upon the following

parties/person (s):

TO: _White and Williams_
_LLP, Attorney Nicholas R._
_WYNN, Attorney for Connection_
_Lp, 600 N. King St, Suite 800_
_Wilmington, DE 19801_

TO: _____

_____

_____

_____

_____

TO: _____

_____

_____

_____

TO: _____

_____

_____

_____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the James T. Vaughn Correctional Center, Smyrna, DE  19977.

On this _16th_ day of _January_, 20_19_

_____

81